IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| BIG SKY DRILLING, INC., *et al.*, | ) | CASE NO. 1:09 CV 2235 |
| | ) | |
| Plaintiffs, | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| v. | ) | |
| | ) | |
| CENTER CAPITAL CORPORATION, | ) | **MEMORANDUM OPINION** |
| | ) | **& ORDER** |
| Defendant. | ) | |

## Introduction

Before me[1] in this diversity action[2] involving the disposition of secured collateral for a finance agreement is defendant and counter-claimant Center Capital Corporation's[3] motion for partial summary judgment[4] against plaintiffs and counter-claim defendants Big Sky Drilling, Inc.; Robert W. Barr; Laura J. Barr; Big Sky Well Service, Inc.; Meridian Energy Co.; Big Sky Energy, Inc.; and GB Marketing, Inc. (Big Sky).  Big Sky has responded in opposition to this motion,[5] to which Center Capital has filed a reply.[6]  For the reasons that follow, Center Capital's motion will be granted.

---

[1] The parties have consented to my jurisdiction.  ECF # 15.

[2] ECF # 1.

[3] Center Capital Corporation is now known as Webster Capital Finance.  ECF # 30. For ease of reference to the existing file, this entity will be referred to here as Center Capital.

[4] *Id*.

[5] ECF # 32.

[6] ECF # 33.

**Facts**

**A.     Background facts**

The relevant facts are not extensive or complex.  In 2007, Big Sky obtained financing from Center Capital to purchase drilling equipment for use in its business.[7]  That piece of equipment served as collateral for the loan, which loan was also guaranteed by the other defendants.[8]

Following a default on that loan in 2009, an action was brought in the Ohio courts by Big Sky seeking to enjoin Center Capital from taking any action under the finance agreement to repossess the collateral.[9]  After removal of that action to this Court,[10] consent to my jurisdiction, and Center Capital's filing of a counter-claim,[11] the parties in December 2009 entered into a limited forbearance agreement by which Big Sky was to make certain agreed-upon payments to Center Capital to satisfy its obligations under the loan and Center Capital would take possession of the collateral.[12]  In March 2010 that agreement was extended by the parties.[13]

---

[7] *See*, ECF # 30 at 3.

[8] *Id*.

[9] ECF # 1.

[10] *Id*.

[11] ECF # 5.

[12] ECF # 24.

[13] ECF # 26.

Since that extension, the parties agree that payments have not been made as required under the terms of the extended forbearance agreement.[14] They further acknowledge that they were unable to agree upon terms for continued repayment of the loan such as would permit Center Capital to return use of the collateral drilling equipment to Big Sky.[15] In that posture, Center Capital now moves for partial summary judgment to enforce its remedies against Big Sky under the finance agreement.

**B.    Parties' arguments**

Center Capital initially claims that, because the forbearance agreement is no longer, in effect, it is owed $753, 595.82 under the loan plus interest, attorney's fees, and costs.[16]

Big Sky, in its response, states that it has already sold the equipment at issue with the consent of Center Capital in March, 2011 for $400,000, thus reducing any amount it owes under the loan.[17] It further contends that the sale price was "drastically reduced" from the equipment's fair market value because Center Capital failed to properly maintain the equipment during the time it had control of the equipment under the forbearance agreement.[18] Big Sky also argues that Center Capital's failure to maintain the equipment in proper

---

[14] ECF # 30 at 4; ECF # 32 at 3-4.

[15] *Id.*

[16] ECF # 30 at 5-6.

[17] ECF # 32 at 4.

[18] *Id*. at 4-5.

operating condition during the forbearance agreement is why Big Sky ceased making the payments called for in that agreement.[19]

In its reply, Center Capital first accepts Big Sky's point that the equipment has been sold for $400,000 and thus that any judgment due it under the finance agreement should be correspondingly reduced.[20] However, Center Capital contends that it was not required to maintain the collateral.[21] Moreover, it argues that the equipment "was in significant disrepair" when Center Capital took control of it under the forbearance agreement, such that any loss of value should not be attributed to Center Capital nor reduce the amount owed by Big Sky.[22]

## Analysis

**A.     Standards of review**

*1.     Diversity action*

As is well-recognized, a federal court deciding a matter before it under its diversity jurisdiction is to apply federal law to procedural issues and apply the law of the forum state to substantive questions.[23] When applying the substantive law of the forum state, the federal

---

[19] *Id.* at 4.

[20] ECF # 33 at 2.

[21] *Id.* at 3.

[22] *Id.* at 4.

[23] *City of Cleveland v. Ameriquest Mortgage Secs., Inc.*, 615 F.3d 496, 502 (6th Cir. 2010) (citations omitted).

diversity court must follow the decisions of the state's highest court when that court has addressed the relevant issue.[24] If that issue has not been directly addressed, the federal diversity court must anticipate how the relevant state court would act.[25] Decisions from intermediate state appellate courts are viewed as persuasive unless it is shown that the state's highest court would decide the matter differently.[26]

In the particular instance of enforcing a contract in a diversity action, the federal court will generally enforce the parties' contractual choice of governing law.[27] If there is no enforceable choice of law in the contract, the federal diversity court employs the choice of law analysis of the forum state.[28]

### *2. Summary judgment*

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[29] The burden of showing the absence of any such "genuine issue" rests with the moving party:

---

[24] *Id.* (citation omitted).

[25] *Id.* (citation omitted).

[26] *In re Dow Corning Corp.*, 419 F.3d 543, 549 (6th Cir. 2005) (citation omitted).

[27] *Savedoff v. Access Group, Inc.*, 524 F.3d 754, 762 (6th Cir. 2008) (citations omitted).

[28] *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009) (citation omitted).

[29] Fed. R. Civ. P. 56(c).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.[30]

A fact is "material" only if its resolution will affect the outcome of the lawsuit.[31] Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.[32] The court will view the summary judgment motion "in the light most favorable to the party opposing the motion."[33]

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.[34] Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[35] Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.[36]

---

[30] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)).

[31] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[32] *Id.* at 252.

[33] *U.S. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

[34] *McDonald v. Petree*, 409 F.3d 724, 727 (6th Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 322).

[35] *Leadbetter v. Gilley*, 385 F.3d 683, 689 (6th Cir. 2004) (quoting *Anderson*, 477 U.S. at 248-49).

[36] *Anderson*, 477 U.S. at 249-50 (citation omitted).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover.[37] The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury."[38] "In other words, the movant can challenge the opposing party to 'put up or shut up' on a critical issue."[39]

In sum, proper summary judgment analysis entails the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[40]

**B.  Application of standard – Center Capital's summary judgment motion is well-taken and is granted.**

Initially, I observe that there is no dispute here concerning three critical facts. First, the parties concede that the forbearance agreement has been terminated by Big Sky's non-payment, and so that agreement has no effect on the present motion.[41] In that same regard, there is no dispute that the finance agreement[42] sets forth the obligations of Big Sky toward Center Capital, as well as the rights of Center Capital as concerns its remedies. Finally, there is agreement that the collateral at issue has been sold for $400,000 after being

---

[37] *Id.* at 256.

[38] *Cox v. Kentucky Dept. of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

[39] *BDT Prods. v. Lexmark Int'l*, 124 F. App'x 329, 331 (6th Cir. 2005).

[40] *Anderson*, 477 U.S. at 250.

[41] *See*, ECF # 30 at 4; ECF # 32 at 3.

[42] *See*, ECF # 30, Ex. 2.

in Center Capital's possession, thus reducing any liability by Big Sky under the finance agreement by that amount.[43]

Thus, the remaining issue centers on what obligation, if any, Center Capital had to maintain the collateral while it had possession of such collateral under the forbearance agreement. If there was an obligation to maintain, as Big Sky contends, and if Center Capital failed to discharge that obligation and so diminished the value of the collateral, then such a finding could reduce the remaining amount Big Sky owes under the finance agreement since the equipment was sold below the amount financed. If, however, as Center Capital asserts, its sole obligation under either existing law or the parties' agreement was simply not to create an unreasonable risk of harm to the collateral in its possession, then, it contends, it is entitled to full recovery of the amounts specified in the finance agreement. In particular, it argues: (1) the collateral was not in working condition when it was turned over to it, (2) it had no obligation to repair the equipment, and (3) it otherwise complied with the obligation not to put the collateral at risk of harm.

The core of Big Sky's argument is that Center Capital "failed to preserve the equipment [here at issue] in proper operating order, thereby significantly reducing the value of the equipment and the ability to sell it for an appropriate price."[44] That failure, according to Big Sky, means that Center Capital breached the duty imposed by Ohio statute on a party

---

[43] ECF # 32 at 4; ECF # 33 at 2.

[44] ECF # 32 at 6.

-8-

taking possession of collateral to preserve that collateral.[45] That statute further provides that a debtor may recover damages occasioned by the loss of value in collateral arising from the failure of a party in possession to use reasonable care in preserving the value of that collateral.[46]

Initially, notwithstanding that provision of Ohio law, Center Capital correctly notes that Connecticut law, not that of Ohio, applies in this case by terms of the parties' finance agreement.[47] As noted above, this Court generally will give effect to such a choice of law in a diversity case. Here, in both the finance agreement[48] and Connecticut statute,[49] a secured party in possession of collateral is obligated only to exercise reasonable care as to preserving that collateral.

As the Connecticut Superior Court noted, while this exact section of the Connecticut statute has not been interpreted by Connecticut courts, since this provision "is the Connecticut version of the Uniform Commercial Code § 9-207[,] decisions of other

---

[45] *Id*., citing Ohio Rev. Code § 1309.207.

[46] *Id*.

[47] ECF # 33 at 4. *See also*, ECF # 30, Ex. 2 (finance agreement) at ¶ 8 ("This Agreement shall be ... governed by and construed in accordance with the laws of the State of Connecticut ...").

[48] ECF # 30, Ex. 2 at ¶ 4(k). "Lender shall have no duty to ... protect the collateral or any part thereof beyond exercising reasonable care in the custody of any collateral in the possession of Lender."

[49] Connecticut General Statutes §42a-9-207. "(a) Except as otherwise provided in subsection (d) [as concerns chattel paper and promissory notes], a secured party shall use reasonable care in the custody and preservation of collateral in the secured party's possession."

jurisdictions' (sic) interpreting similar statutes may be appropriately considered." [50] In that regard, the Official Comment to the Uniform Commercial Code 9-207 notes that this subsection merely imposes the same duty of care imposed on a pledgee at common law, which, as set forth in the Restatement on Security § 17, is that which "a reasonable man would recognize as necessary to prevent his conduct from creating an unreasonable risk of harm to the pledgor's chattel."

In this instance, the undisputed Rule 56 evidence before me establishes first that the equipment was only in "fair or fair to poor" condition when it was given over to Center Capital under the forbearance agreement.[51] The evaluation of the collateral's condition conducted at the request of Center Capital at the beginning of its possession of the drilling rig at issue, and not disputed by Big Sky, documents multiple problems:

(1) the rig "shows evidence of severe lack of lubrication" of its moving parts;

(2) "[t]he main pullback cables are rusted;"

(3) "all hydraulic functions were ... not up to specified hydraulic performance ...[such that] [t]he hydraulic system will require extensive trouble shooting ...;"

(4) the "jib boom slew drive is worn out and the hydraulic motor is just hanging from it's (sic) hoses;"

(5) "the casing bales ... [are] showing severe abuse;" and

---

[50] *Ancell v. Fleet Bank, N.A.*, 1996 WL 156103, at *2 (Conn. Super. Ct., March 14, 1996).

[51] ECF # 33, Ex. 2 (service work order of July 30, 2009).

    (6)    the "Emergency Stop Switch was rigged so that it could not be engaged."[52]

The evaluation concluded that the rig required $50,000 of repairs for "known deficiencies," with additional sums potentially needed "based on hydraulic system trouble shooting and results."[53]

In addition to the undisputed evidence that shows multiple deficiencies in the rig, Big Sky has offered nothing to contest the Rule 56 evidence in this matter that Center Capital took possession of the non-working rig[54] that was in "fair or fair to poor condition,"[55] kept it "in a secure location,"[56] and never operated the rig while it was in its possession.[57] As such, under the applicable standard stated above, I find that Center Capital has established under both the specific language of the finance agreement and Connecticut law that it exercised such care over Big Sky's collateral that a reasonable man would exercise so as to prevent his conduct from creating an unreasonable risk of harm to that collateral.

Thus, I further find that Center Capital has established its right to enforce the terms of the finance agreement while Big Sky has not shown that Center Capital is responsible for any loss of value of that collateral. Specifically, Big Sky has not established that it can claim

---

[52] *Id*. at 1.

[53] *Id*.

[54] ECF # 33, Ex. 1 (affidavit of John Napierkowski) at ¶ 8.

[55] *Id*. at ¶ 11.

[56] *Id*. at ¶ 12.

[57] *Id*. at ¶ 8.

any damages arising from Center Capital's conduct while it had possession of the collateral which might offset the amounts due and owing by Big Sky to Center Capital under the finance agreement.

## Conclusion

Therefore, for the reasons stated above, Center Capital's motion for partial summary judgment is granted.

In that regard, Center Capital is directed to prepare a draft judgment entry setting forth what it claims it is owed by Big Sky under the terms of the finance agreement, such entry to also reflect that all claims asserted by the counter-claim have been either satisfied by the judgment or are now moot.

IT IS SO ORDERED.

Dated:   June 15, 2011                                           s/ William H. Baughman, Jr.
                                                                 United States Magistrate Judge